UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION
_____

| | | |
|---|---|---|
| **EDWARD M. DOUGLAS,** | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Case No. 06-CV-2113 |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION

On June 5, 2006, Petitioner, Edward M. Douglas, filed a pro se Motion to Vacate, Set Aside or Correct Sentence (#1) pursuant to 28 U.S.C. § 2255. Petitioner claims that he is entitled to an order vacating or setting aside his conviction based upon newly discovered evidence. He also claims that he is entitled to relief because he was denied the right to present a complete defense at trial. On July 5, 2006, the Government filed its Response to Petitioner's Motion under 28 U.S.C. § 2255 (#8). On July 21, 2006, Petitioner filed his Reply (#10). This court has carefully considered the arguments raised by the parties and the record in this case. Following this careful and thorough review, Petitioner's Motion to Vacate, Set Aside or Correct Sentence (#1) is DENIED.

## FACTS

On May 3, 2002, in Case No. 02-20040, Petitioner was charged in a two-count indictment with distributing crack cocaine, in violation of 21 U.S.C. § 841(a)(1). After several continuances, a jury trial was scheduled to commence on February 24, 2003. Prior to trial, the Government informed the court and defense counsel that it would not be calling Carl Williams, the Government informant who participated in the controlled buys, as a witness at trial. In response, Petitioner's counsel informed the court and the Government that he intended to call Williams as a witness. The Government then filed a Motion in Limine (#31) and requested an order from this court prohibiting Petitioner from

calling Williams solely for impeachment purposes. This court held a hearing on this Motion, at which Williams testified. At the hearing, Petitioner established that Williams had used a number of aliases in his life, for some of which he had obtained false driver's licenses and identification cards by paying off a Secretary of State employee. Petitioner also established that Williams had fled to avoid prosecution, and was a fugitive for six years, following his arrest for the drug charge on which he eventually cooperated with agents of the Kankakee Area Metropolitan Enforcement Group (KAMEG). As a result of his cooperation and participation in the controlled buys involving Petitioner, Williams' charge was reduced and he was sentenced to conditional discharge, serving only a few days in jail. At the time of the hearing, Williams was in pretrial custody, having been indicted in the Northern District of Illinois and charged with bank fraud. Although it was established that Williams had not spoken to any prosecutor or agents since the time of the transactions in 2001, Williams testified that he clearly recalled making arrangements to purchase crack from Petitioner and also recalled purchasing first one ounce and then four and one-half ounces of crack from Petitioner.

At the conclusion of the testimony at the hearing, Petitioner's counsel argued that Williams' criminal activity was relevant at trial, arguing:

> Williams is the only critical witness, other than the defendant, who can testify to what occurred on those two occasions and how it came about . . . [O]ur theory of defense is that Carl Williams is such a sophisticated, accomplished con man that he was able to arrange to have that dope with him, either in his car or in his person – I don't know how he did it – but he provided the dope to the cops that he says he got from [Petitioner].

This court disagreed with Petitioner's argument and granted the Government's Motion in Limine.

This court ruled that Williams' credibility was not at issue and that, therefore, the impeachment evidence Petitioner sought to introduce was irrelevant. In explaining its ruling, this court stated, "[this is] an attempt under 404(b) to show that Carl Williams is a bad person, and that his acts are in conformity with that bad people do bad things; and maybe a bad person can somehow evade strip searches and find a way to miraculously come up with drugs and frame [Petitioner]." This court stated that the impeachment evidence Petitioner sought to introduce was irrelevant because it was "sheer speculation" and "conjecture" and "jurors don't base their verdicts on conjecture, speculation, and neither will this Court in determining relevance." This court ruled, however, that Petitioner could call Williams as a transactional witness and could impeach his testimony with prior inconsistent statements concerning the circumstances of the sales.

At trial, the Government presented the testimony of Scott Monferdini and Bill Backus, who were law enforcement agents working for the KAMEG. The Government also presented audio and video tape recordings, the purchased drugs, and seized money. This evidence showed that Williams began working with KAMEG in the spring of 2001, following his arrest in July 2000 on a state drug charge. At the direction of KAMEG, Williams called Petitioner to arrange the purchase of an ounce of crack. During the recorded conversation, the two discussed prices for various amounts of crack. Petitioner told Williams it would cost him "28" (meaning $2,800) for 4½ ounces and "54, 55" for the "whole 9" (meaning $5400-$5500 for nine ounces). Williams told Petitioner that he only wanted an ounce initially and then he would purchase the "4 and a half." Williams asked Petitioner to get the "figures on the onion" (meaning for an ounce) and to get back to him. During a follow-up recorded telephone conversation, Petitioner told Williams that the price for an ounce was "7-5" (meaning $750).

Williams and Petitioner met on April 30, 2001 to conduct the transaction. Monferdini and

Backus testified that, prior to the meeting, they met with Williams and thoroughly searched both him and his automobile for any drugs and money, and found none. The agents then provided him with $750 to use to purchase the ounce of crack from Petitioner.

While under the constant surveillance of the agents, Williams drove his car to the agreed-upon meeting place, a restaurant in Bradley, Illinois. A few minutes later, Petitioner arrived in a Ford Thunderbird automobile. Williams and Petitioner had a brief conversation in Petitioner's car and then got out of the car and opened the trunk. Williams took an article of clothing and what appeared to be a Tylenol bottle from the trunk. Following some further conversation, Williams and Petitioner drove away in their respective cars, with the agents again following Williams and keeping him under surveillance. The entire meeting in the parking lot was recorded on video tape and played for the jury at trial. After the meeting, Williams met with the agents and handed them a Tylenol bottle containing 27.8 grams of crack. The agents searched Williams and his car and found no drugs or money.

On May 9, 2001, Williams called Petitioner to arrange the purchase of an additional 4½ ounces of crack. During a recorded telephone conversation that day, Petitioner told Williams that the price for that quantity of crack was "27-5" (meaning $2750). Following some additional telephone calls over the next week, another meeting occurred on May 18, 2001, at the same location as before. In preparation for the May 18th meeting, the agents thoroughly searched Williams and his car for drugs or money and found none. They provided him with $2750 in cash, with the serial numbers of the bills having been previously recorded, to use to purchase the crack from Petitioner. Williams then drove his car to the same restaurant as before, again under the constant surveillance of the agents. Williams entered Petitioner's car and they had a brief conversation. Williams then removed an article of clothing from the trunk which had been popped open. He and Petitioner then walked to Williams' car and Williams placed the article of clothing in his car. Williams drove away and Petitioner entered

the restaurant. Again, the entire meeting between Williams and Petitioner was recorded on video tape and was played for the jury at trial.

The Government also presented evidence that, after this encounter, some of the agents remained at the restaurant to observe Petitioner while one of the agents followed Williams and met with him at another location. There, Williams handed the agent a can of foot spray and a can of soda pop, both of which were "covert can safes." Each contained a quantity of crack cocaine, totaling 113.8 grams. The agent then searched Williams and his car and found no drugs or money.

Petitioner was arrested shortly after he left the restaurant. At that time, the agents search Petitioner and found $2750 in his front pants pocket. The serial numbers on this money matched with the money that had earlier been provided to Williams for the purchase of the crack. During questioning by the agents following his arrest, Petitioner initially denied that he had been involved in drug deals. However, after the agents told him that they had audio and video recordings of the transactions, Petitioner admitted to delivering crack to Williams on both occasions. Additionally, Petitioner named two people from whom he had obtained the crack and told the agents the drugs had been packaged in the Tylenol bottle and the "can safes" when he obtained them from these sources.

After the Government presented its case at trial without Williams' testimony, Petitioner called Williams as a witness. Williams testified that his cooperation with KAMEG came about after his 1994 arrest on a cocaine delivery charge. Williams admitted he had been a fugitive for six years before being re-arrested and before being contacted by KAMEG about cooperating. He then became a confidential informant for KAMEG and told the agents about Petitioner. Williams testified that he was "100 percent sure" he had received the crack from Petitioner on both occasions.

Petitioner then testified on his own behalf. Petitioner admitted that he had participated in all the recorded phone conversations and met with Williams on the two occasions shown on the

5

videotapes. However, Petitioner denied delivering any crack to Williams. Petitioner testified that he was angry with Williams about the death of Petitioner's grandfather in prison and met with Williams twice and stole his money, but did not supply any drugs to him. Petitioner testified that he "ripped him off." Petitioner also denied telling the agents after his arrest that he sold crack to Williams and denied telling them about the two sources from whom he had obtained the crack. However, Petitioner admitted asking the agents for an opportunity to cooperate with them and admitted he later made a controlled purchase from another person under the agents' direction.     On February 27, 2003, the jury found Petitioner guilty on both counts charged in the indictment. A sentencing hearing was held on June 6, 2003. Due to the amount of crack involved in the offenses and Petitioner's two prior drug convictions, this court sentenced Petitioner to a term of 168 months on Count 1 and a mandatory term of life imprisonment on Count 2, to be served concurrently.

      Petitioner filed a Notice of Appeal and argued that: (1) this court erred when it limited his ability to "cross examine" a "government witness," referring to the confidential informant, Carl Williams; (2) this court erred in allowing the Government to impeach him with evidence of his two prior drug convictions; and (3) his life sentence was unconstitutional. On May 25, 2005, the Seventh Circuit Court of Appeals issued an Opinion in which it rejected all of Petitioner's arguments and affirmed his conviction and sentence. United States v. Douglas, 408 F.3d 922 (7th Cir. 2005). As far as Petitioner's first argument, the Seventh Circuit pointed out that Petitioner "was not limited in cross-examining Williams." Douglas, 408 F.3d at 926 (emphasis in original). The Seventh Circuit noted that Williams was not a Government witness but was Petitioner's witness. Douglas, 408 F.3d at 926. The Seventh Circuit determined that this court correctly prevented Petitioner from impeaching his own witness because the "so-called impeachment evidence was not relevant." Douglas, 408 F.3d at 926. The Seventh Circuit noted that the Government announced prior to trial that it did not intend to

call Williams and, from the Government's point of view, "Williams was not an essential witness-every element of the factual narrative necessary to convince the jury of [Petitioner's] guilt could be offered without Williams's testimony." Douglas, 408 F.3d at 926. The Seventh Circuit concluded that "Williams's credibility was not at issue" so "any evidence introduced to impeach Williams's credibility would be irrelevant and inadmissible." Douglas, 408 F.3d at 927.      On March 13, 2006, Petitioner, through counsel, filed a Motion for New Trial based on Newly Discovered Evidence pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Petitioner attached the statements of two individuals who were incarcerated with Williams. Petitioner also stated that he had forwarded a copy of a videotape from a third witness to the Government. Petitioner stated that these witnesses had been incarcerated with Williams and that, according to the three men, Williams admitted to them that he had "set up" Petitioner by bringing crack cocaine to the controlled buys and presenting it to police as having been obtained from Petitioner. Petitioner noted that, at trial, he had made the same argument to the jury, contending that Williams had introduced the cocaine into the transactions without Petitioner's knowledge. Petitioner contended that if these statements had been available at the time of trial this court would have allowed a full examination of Williams to expose all areas of impeachment. Petitioner argued that this could have materially affected the jury's verdict in this case.

On March 21, 2006, the Government filed its Response to Petitioner's Motion. The Government argued that the Motion was untimely because it was not filed within three years after the verdict or finding of guilty, as required by Rule 33(b) of the Federal Rules of Criminal Procedure. On March 27, 2006, this court entered an Order which stated that this court agreed with the Government that Petitioner's Motion was untimely. Accordingly, the Motion was dismissed.

On April 10, 2006, Petitioner filed a pro se Motion for Reconsideration. Petitioner stated that

his attorney had the affidavits establishing the existence of newly discovered evidence long before he filed the Motion for New Trial. Petitioner asked this court to reconsider its ruling and relieve him from the consequences of his attorney filing a late motion. On April 11, 2006, this court entered a text order denying Petitioner's pro se Motion for Reconsideration. This court stated that Petitioner "may raise these issues in a Motion under 28 U.S.C. Section 2255, which must be filed within one year after [Petitioner's] judgment of conviction became final."[1] On May 4, 2006, Petitioner filed a Notice of Appeal but subsequently asked the Seventh Circuit to dismiss the appeal.

    On June 5, 2006, Petitioner filed his pro se Motion to Vacate, Set Aside or Correct Sentence (#1) pursuant to 28 U.S.C. § 2255. Petitioner first argued that he is entitled to relief based upon newly discovered evidence, noting at length that his attorney failed to file a timely motion for a new trial based upon newly discovered evidence. Petitioner attached a copy of the affidavit of Keith Johnson and the statement of Darren Wilder. In these statements, both Johnson and Wilder stated that Williams told them he had drugs on him when he went to the controlled buys involving Petitioner and that he had set Petitioner up. Petitioner also referenced a similar videotaped statement of Quincy Page; however, this court has not been provided with that statement. In addition, Petitioner attached his own affidavit, in which he stated that he relied on his former counsel to file a timely Rule 33 motion for a new trial. Petitioner also attached letters from his former attorney which show that his attorney had the witnesses' statements well before the motion for new trial was filed and in which his former attorney apologized for the late filing. Petitioner argued that he is entitled to a new trial based upon the statements of the witnesses.

    Petitioner's second claim is that he was denied his right to present a complete defense.

---

[1] Contrary to Petitioner's argument, this text order was not, in any way, an indication by this court as to the merits of such a motion.

Petitioner relied upon Holmes v. South Carolina, 547 U.S. 319 (2006), and argued that this court's "limitations on cross-examination of Carl Williams denied [him] a fundamental right to present a complete defense" because "Williams' credibility and motive was critical to the defense."

On July 5, 2006, the Government filed its Response to Petitioner's Motion Under 28 U.S.C. § 2255 (#8). The Government argued that Petitioner is not entitled to any relief based upon § 2255. The Government argued that the law is well settled that a § 2255 motion cannot be used as a vehicle for relief based upon newly discovered evidence. The Government also noted that, to the extent that Petitioner is claiming he was denied the effective assistance of counsel because his counsel did not file his motion for new trial in a timely fashion, that claim fails because Petitioner has no Sixth Amendment right to counsel in a post-appeal Rule 33 proceeding. The Government also argued that Petitioner's second claim for relief fails because this claim was soundly rejected by the Seventh Circuit in Petitioner's direct appeal. The Government also argued that the Supreme Court's recent decision in Holmes does not offer anything new to cast doubt on the propriety of the Seventh Circuit's decision.

On July 21, 2006, Petitioner filed his pro se Reply (#10). Petitioner stated that this court should consider his argument regarding newly discovered evidence because he "positively establish[ed] that it was his attorney's fault for not filing the motion on time." However, Petitioner stated that he "never made a claim of being denied a Sixth Amendment right to effective assistance of counsel." Petitioner also again argued that this case is similar to Holmes and contended that, based upon Holmes, his attorney should have been allowed to question Williams at trial as to his credibility for impeachment purposes.

## ANALYSIS

This court first notes that relief under 28 U.S.C. § 2255 is reserved for extraordinary

situations. Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996), citing Brecht v. Abrahamson, 507 U.S. 619, 633-34 (1993). Accordingly, a petitioner may avail himself of relief under § 2255 only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude, or result in a complete miscarriage of justice." Boyer v. United States, 55 F.3d 296, 298 (7th Cir. 1995). Based upon this standard, and the record in this case, this court agrees with the Government that Petitioner has not included any claims which would warrant an evidentiary hearing or relief under 28 U.S.C. § 2255. This court notes that Petitioner was convicted following a jury trial at which the Government presented overwhelming evidence of Petitioner's guilt, including audio tapes, video tapes and evidence that Petitioner confessed to committing the offenses. See Douglas, 408 F.3d at 929.

Petitioner first argues that he is entitled to relief based upon newly discovered evidence. However, the Government is correct that a refusal to grant a new trial on the basis of newly discovered evidence is not actionable in habeas corpus. Johnson v. Bett, 349 F.3d 1030, 1038 (7th Cir. 2003); Guinan v. United States, 6 F.3d 468, 470 (7th Cir. 1993), overruled on other grounds in Massaro v. United States, 538 U.S. 500, 505 (2003), citing Herrera v. Collins, 506 U.S. 390, 400 (1993). In Herrera, the petitioner was convicted of two murders and sentenced to death. He later claimed "actual innocence" based upon newly discovered evidence. Herrera, 506 U.S. at 396. The newly discovered evidence consisted of affidavits from witnesses who claimed that another person, then deceased, had told them that he committed the murders and from witnesses who claimed to have witnessed the murders. Herrera, 506 U.S. at 396-97. The state courts and lower federal courts denied relief, and the United States Supreme Court affirmed. The Court stated that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief

on federal habeas corpus." Herrera, 506 U.S. at 400, quoting Townsend v. Sain, 372 U.S. 293, 317 (1963). The Court explained that "[o]nce a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears." Herrera, 506 U.S. at 399. Therefore, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera, 506 U.S. at 400.

In Guinan, the Seventh Circuit held that the reasoning of Herrera applied to motions under § 2255 because "[s]ection 2255 is a substitute for habeas corpus and like it is confined to correcting errors that vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude." Guinan, 6 F.3d at 470. In Guinan, the petitioner filed a motion under § 2255 claiming that newly discovered evidence showed that he was innocent and that his counsel at his criminal trial had been ineffective. This motion was filed after the deadline for filing a motion under Rule 33 had passed. The Seventh Circuit determined, based upon Herrera, that section 2255 could not be used to circumvent the limitation period of Rule 33. Guinan, 6 F.3d at 470. The Seventh Circuit stated:

> The purpose of granting a new trial on the basis of newly discovered evidence is not to correct a legal error, but to rectify an injustice, and the office of section 2255 is the former, not the latter. The conviction of an innocent person is an injustice, but it is only when such a conviction results from a legal error that the courts speak of a "miscarriage of justice" that warrants a new trial. Even then, unless the error is of constitutional magnitude, a federal court does not have the power to correct it in a proceeding brought under the habeas

11

>corpus statute (section 2254) or, we add today, its federal-prisoner
>
>substitute (section 2255).

Guinan, 6 F.3d at 470-71 (citations omitted).  Therefore, based upon Guinan, this court cannot consider Petitioner's claim that he is entitled to a new trial based upon newly discovered evidence.[2]

This court must also address Petitioner's lengthy arguments regarding his counsel's failure to file a timely motion under Rule 33.  Petitioner, in his Reply, stated that he was not raising an issue of ineffective assistance of counsel.  However, this statement is contradicted by Petitioner's affidavit and other attachments to his § 2255 Motion and his arguments that it was his attorney's fault that the motion for new trial was not filed in a timely manner.  In any event, the Government is correct that such a claim would not entitle him to relief.  It is well settled that "once the direct appeal has been decided, the right to counsel no longer applies." Kitchen v. United States, 227 F.3d 1014, 1018 (7th Cir. 2000), citing Pennsylvania v. Finley, 481 U.S. 551, 557 (1987).  Therefore, there is no right to counsel in Rule 33 proceedings after a defendant's direct appeal has been decided.  Kitchen, 227 F.3d at 1018-19.  Where "there is no constitutional right to counsel there can be no deprivation of effective assistance." Kitchen, 227 F.3d at 1017-18, quoting Coleman v. Thompson, 501 U.S. 722, 752 (1991).

Finally, this court agrees with the Government that Petitioner's argument that he was denied the right to present a complete defense because he was limited in his ability to cross-examine Williams is a rehash of the argument squarely presented to the Seventh Circuit, and rejected.  "In

---

[2] This court notes, nevertheless, that it agrees with the Government that it is unclear how the "newly discovered evidence" Petitioner cites could be used, even if Petitioner was granted a new trial.  Given the fact that the Government would be unlikely to call Williams in its case in chief, Petitioner would be unable to use the evidence for impeachment purposes.  In addition, the inmates' testimony about alleged conversations with Williams may well be inadmissible hearsay.

the context of § 2255 petitions, the 'law of the case' doctrine dictates that 'once [the Seventh Circuit] has decided the merits of a ground of appeal, that decision establishes the law of the case and is binding on a [court] asked to decide the same issue in a later phase of the same case, unless there is some good reason for reexamining it.'" United States v. Fuller, 398 F.3d 644, 648 (7th Cir. 2005), cert. denied, 126 S. Ct. 238 (2005), quoting United States v. Mazak, 789 F.2d 580, 581 (7th Cir. 1986); see also Norris v. United States, 687 F.2d 899, 900 (7th Cir. 1982). This court also agrees that the Supreme Court's decision in Holmes, relied on by Petitioner, does not provide a good reason for reexamining the Seventh Circuit's ruling in this case. In Holmes, the Court held that a criminal defendant's rights are violated by an evidence rule under which the defendant may not introduce proof of third-party guilt if the prosecution has introduced forensic evidence that, if believed, strongly supports a guilty verdict. Holmes, 126 S. Ct. at 1734-35. In doing so, the Court recognized that the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense and reiterated the principle that the Constitution "prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." Holmes, 547 U.S. 319, 126 S. Ct. at 1731-32. However, the Court also stated that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury" and that the Constitution permits judges to exclude evidence that is only "marginally relevant." Holmes, 547 U.S. 319, 126 S. Ct. at 1732-33.

This case did not involve an arbitrary rule prohibiting the introduction of evidence in certain situations, which was the case in Holmes. See Holmes, 547 U.S. 319, 547 U.S. at 1735. Instead, this court found, and the Seventh Circuit agreed, that the impeachment evidence Petitioner sought

13

to introduce was not relevant. See Douglas, 408 F.3d at 926-27. Contrary to Petitioner's apparent belief, the Court in Holmes did not hold that criminal defendants must be allowed to present any evidence they wish in order to present a "complete defense." This court therefore concludes that the Holmes decision does not provide a good reason for reexamining the Seventh Circuit's ruling on this issue.

IT IS THEREFORE ORDERED THAT:

(1) Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (#1) is DENIED.

(2) Petitioner's Motion to Alter or Amend (#14) this court's Opinion which denied his Motion for Bond pending resolution of this case is MOOT.

(3) This case is terminated.

ENTERED this  27th  day of March, 2007

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE